JUSTICE GABRIEL, dissenting.
¶ 30 I agree with the majority that the division below erred in concluding that (1) the failure to keep a road in the same general state of repair or efficiency as it was initially constructed constitutes an unreasonable risk within the meaning of the Colorado Governmental Immunity Act ("CGIA"); and (2) a plaintiff satisfies his or her burden of proving an unreasonable risk to the health or safety of the public, within the meaning of section 24-10-103(1.3), C.R.S. (2017), when he or she shows that a governmental entity failed to restore a damaged road to its same state of efficiency or repair as initially constructed. Maj. op., ¶¶ 17-19. I further agree with the majority that an unreasonable risk for purposes of the CGIA cannot be defined solely in terms of foreseeability, as Heyboer asserts, because such a reading would effectively render the term "unreasonable" meaningless.
*499 Id. at ¶¶ 20-22. And I agree with the majority's determination that to establish an unreasonable risk in a case like this, a plaintiff must prove that the road condition created a chance of injury, damage, or loss that exceeds the bounds of reason. Id. at ¶ 23.
¶ 31 Nonetheless, unlike the majority, I believe that Heyboer has sufficiently established a waiver of the City's immunity because she has shown that her injuries resulted from a dangerous condition of a public highway, road, or street that physically interfered with the movement of traffic.
¶ 32 Accordingly, like the court of appeals division, I would reverse the district court's judgment dismissing Heyboer's claims, but I would do so on other grounds. I therefore respectfully dissent.
I. Factual Background
¶ 33 The majority has set forth most of the pertinent facts of this case, and I need not repeat its factual recitation here. I note, however, several additional facts that are important to my analysis.
¶ 34 First, Veres testified, without contradiction, that the severe ruts in the road caused his motorcycle to jump and interfered with his ability to stop safely. He further testified that had the roadway been smooth, he would have been able to stop in time to avoid the collision.
¶ 35 Second, Heyboer's accident reconstruction expert opined that (1) the road's uneven surface limited Veres' ability to stop and to control his motorcycle; (2) the collision at issue would not have occurred had the road surface been smooth; and (3) the road's condition therefore physically interfered with the movement of traffic.
¶ 36 Third, the City's pavement engineer, Kennedy, conceded that (1) a road surface's condition is a factor in determining whether an intersection is dangerous and interferes with the movement of traffic; (2) the intersection at issue was in "very poor" condition and was "dangerous" at the time of the accident; and (3) the City knew of the intersection's condition before the accident, and, in fact, in the years and months leading to this accident, a number of citizens had advised the City that the intersection was dangerous.
¶ 37 Finally, the City conceded that it had a duty to maintain the road.
II. Analysis
¶ 38 I begin by addressing our standard of review and the principles governing our interpretation of the CGIA. I then discuss the pertinent provisions of the CGIA and apply the plain meanings of those provisions to the facts of this case.
A. Standard of Review and Pertinent Interpretive Principles
¶ 39 Whether governmental immunity applies to bar a lawsuit is a matter of the district court's jurisdiction. Tidwell ex rel. Tidwell v. City & Cty. of Denver, 83 P.3d 75, 81 (Colo. 2003). Accordingly, if raised before trial, the issue is properly addressed in a C.R.C.P. 12(b)(1) motion to dismiss. Id. When the jurisdictional issue involves factual disputes, an appellate court reviews the district court's findings under the clearly erroneous standard. Id. When, however, the facts are undisputed and the issue is one of law, an appellate court reviews the district court's jurisdictional ruling de novo. Id.
¶ 40 We have often observed that the CGIA's immunity derogates Colorado's common law. See, e.g., id. As a result, we construe the CGIA's waiver provisions broadly and its exceptions to these waiver provisions strictly. Id.
¶ 41 In light of the foregoing, when a plaintiff sues a governmental entity and that entity moves to dismiss on immunity grounds, we afford the plaintiff the reasonable inferences from his or her evidence. Id. at 85. And although the plaintiff bears the burden of establishing the court's jurisdiction, "the burden is a relatively lenient one." Id. at 86.
B. CGIA
¶ 42 Section 24-10-106(1), C.R.S. (2017), provides in pertinent part:
Sovereign immunity is waived by a public entity in an action for injuries resulting from:
*500 ....
(d)(I) [a] dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion, if paved, ... of any public highway, road, street, or sidewalk within the corporate limits of any municipality.
¶ 43 A "dangerous condition," in turn, is defined as
either a physical condition of a facility or the use thereof that constitutes an unreasonable risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility.
§ 24-10-103(1.3).
¶ 44 And as noted above, I agree with the majority's determination that in a case like this, a physical condition of a road constitutes an unreasonable risk to the health or safety of the public when the road's condition created a chance of injury, damage, or loss that exceeds the bounds of reason. See maj. op., ¶ 23.
¶ 45 Thus, in order to establish a waiver of sovereign immunity in a case like this, a plaintiff must show, under the relatively lenient standard described above, that his or her injuries resulted from a physical condition of the road that (1) created a chance of injury, damage, or loss exceeding the bounds of reason; (2) was known to the City; (3) was caused by the City's negligence in constructing or maintaining the road; and (4) physically interfered with the movement of traffic.
¶ 46 Unlike the majority, I believe that Heyboer has carried her lenient burden of establishing each of these elements, and I address each element in turn.
¶ 47 First, in my view, Heyboer's injuries resulted from a physical condition of the road that created a chance of injury, damage, or loss exceeding the bounds of reason. City pavement engineer Kennedy conceded that the intersection was in "very poor" condition and that it was "dangerous" at the time of the collision, thus establishing that the physical condition of the road created a chance of injury, damage, or loss. In addition, Heyboer introduced evidence that this accident occurred because the road's condition prevented Veres from being able to stop his motorcycle. Specifically, Veres testified that the ruts in the road caused his motorcycle to jump, thereby interfering with his ability to stop safely. Moreover, Heyboer's accident reconstruction expert testified that the road's uneven surface limited Veres' ability to stop and to control his motorcycle and that the collision at issue would not have occurred had the road surface been smooth. In my view, this evidence sufficiently established that Heyboer's injury resulted from the road's condition. And given the City's admitted knowledge of the "very poor" and "dangerous" condition of this intersection, I believe that the risk of injury, damage, or loss posed by the road's condition exceeded the bounds of reason, at least for purposes of the lenient burden of proof necessary to defeat a motion to dismiss on immunity grounds.
¶ 48 Second, it is undisputed that the risk posed by the road's condition was well known to the City before the accident at issue occurred. Kennedy admitted that he had evaluated the intersection at issue and found its condition "very poor" and "dangerous."
¶ 49 Third, in my view, Heyboer sufficiently showed, for purposes of overcoming the City's motion to dismiss, that the risk of injury was caused by the City's negligence in maintaining the road. As the majority correctly observes, the government's duty to maintain a road is triggered only after the road becomes unreasonably dangerous. See maj. op., ¶ 18. At that point, the government has a duty to take the steps necessary to return the road to the same general state of being, repair, or efficiency as initially constructed. See id. Here, the City indisputably knew that the intersection at issue had become dangerous. City pavement engineer Kennedy conceded that. And for the reasons set forth above, I believe that the road's condition was unreasonably dangerous. Accordingly, the City had a duty to take steps to repair the road (indeed, the City conceded that it had a duty to maintain the road), and *501 the City's failure to do so constitutes negligence.
¶ 50 Finally, as Heyboer's expert testified, the condition of the road at issue physically interfered with the movement of traffic. Specifically, the expert opined that the road's condition limited Veres' ability to stop and to control his motorcycle, and Veres' testimony that he could not stop because the ruts in the road caused his motorcycle to jump fully supports the expert's opinion. In my view, a road condition that impedes a vehicle's ability to stop when necessary is a physical interference with the movement of traffic.
¶ 51 Accordingly, I believe that Heyboer has sufficiently established each of the elements necessary to support a waiver of sovereign immunity, particularly given our acknowledgment that her burden of proof in this regard was "relatively lenient." Tidwell, 83 P.3d at 86.
III. Conclusion
¶ 52 For these reasons, I would conclude that the district court erred in dismissing Heyboer's claim on sovereign immunity grounds. I would therefore affirm the division's judgment, albeit on grounds different from those on which the division relied, and allow Heyboer's claim to proceed on the merits.
¶ 53 Accordingly, I respectfully dissent.
I am authorized to state that JUSTICE HOOD and JUSTICE HART join in this dissent.